OPINION
Plaintiff-appellant Jeffrey Rampi (hereinafter "husband") appeals the December 15, 1998 Judgment Entry of the Stark County Court of Common Pleas, Domestic Relations Division, which overruled his objections to a magistrate's decision. Defendant-appellee is Therese Rampi (hereinafter "wife"). Also a party in this case is the Child Support Enforcement Agency (hereinafter "CSEA").
 STATEMENT OF THE FACTS AND CASE
Husband and wife were married on July 26, 1975 in Canton, Ohio. One child was born as issue of the marriage. The parties divorced June 30, 1981. At the time of divorce, the child was still a minor. The Decree of Divorce, filed July 1, 1981, granted custody of the minor child to wife, and ordered husband to pay child support in the amount of $150.00 per month. The decree specified child support payments would continue until: the child obtains the age of eighteen years, becomes married, dies or becomes employed full-time, which ever first occurs. In the event that the child reaches eighteen and is still in high school, the order of support shall continue until said child graduates from high school.
(Decree of Divorce at 1). In a June 22, 1994 Judgment Entry, the trial court increased the amount of child support to $328.00 per month, and ordered husband's employer, the Hoover Company, to withhold that amount from husband's wages pursuant to O.R.C.3113.21(D)(1). The Hoover Company was directed to send the amount withheld from each pay period to the CSEA. This order contained a paragraph under the heading: "Notice to [wife] IT IS FURTHER ORDERED that the person receiving support shall immediately notify the STARK COUNTY CHILD SUPPORT ENFORCEMENT AGENCY of any reason for which the support order should terminate, including, but not limited to death, marriage, emancipation * * *"
The child turned eighteen on November 9, 1996. The day before, November 8, 1998, husband took copies of the child's birth certificate, the divorce decree and the wage assignment to CSEA and asked CSEA to terminate the wage withholding order. After an investigation, CSEA determined the child was emancipated and terminated the wage withholding order, effectively terminating child support. Apparently, wife later took issue with CSEA's decision. On January 16, 1997, CSEA filed a "Motion for Declaratory Judgment" requesting the court to "clarify the date of emancipation" of the minor child. On January 30, 1997, husband filed a Motion for Contempt against wife for failing to properly notify the court or CSEA of the date of emancipation in violation of the June 22, 1994 order. In a February 20, 1997 Magistrate's Order, a hearing was set for April 22, 1997, on the issue of emancipation. On March 6, 1997, wife answered husband's contempt motion and filed her own contempt motion against husband. On March 14, 1997, the trial court heard arguments on the motions for contempt. In a March 14, 1997 Judgment Entry, the trial court dismissed husband's motion for contempt, finding it was premature, in light of the hearing scheduled for April 22, 1997 on the issue of emancipation. On April 14, 1997, husband appealed the March 14, 1997 Judgment Entry to this Court. On April 16, 1997, CSEA filed another "Motion for Declaratory Judgment." This motion again sought clarification of the date of the emancipation of the minor child. The issue of emancipation was continued indefinitely in a May 16, 1997 Judgment Entry, as the trial court awaited the outcome of husband's appeal. On October 14, 1997, this Court affirmed the March 14, 1997 Judgment Entry of the Stark County Court of Common Pleas, Family Court Division, which dismissed husband's motion for contempt. On January 14, 1998, CSEA filed a Motion for Orders Authorizing Intervention pursuant to R.C.3111.07(B) and Civ.R. 24. In a judgment entry filed the same day, the trial court granted CSEA's motion to intervene and made them a party in the matter. On January 29, 1998, husband filed a Motion to Dismiss the January 16, 1997 Motion for Declaratory Judgment filed by CSEA. In his motion, husband maintained CSEA had no statutory authority to file a motion for declaratory judgment; CSEA was not a proper party; not an adverse party; and CSEA's intervention was contrary to law. On April 16, 1998, CSEA voluntarily dismissed its Motion(s) for Declaratory Judgment, and filed a "Motion." The Motion made the same request as the voluntarily withdrawn Motion(s) for Declaratory Judgment. Also on the same date, CSEA filed a second Motion for Orders Authorizing Intervention. The trial court again granted this second motion ex parte the on the same day, April 16, 1998. Also on April 16, 1998, CSEA filed a Motion to Reinstate Establish [sic] Order of Child Support. This motion stated "On December 3, 1996, a notice to income provider to terminate the withholding of obligor income/assets was issued." The motion requested the court to reinstate the order of support. On April 28, 1998, husband filed a Memorandum in Response to the motions filed by CSEA on April 16, 1998. CSEA replied, and on October 27, 1998, a magistrate conducted an evidentiary hearing. At the opening of the hearing, the magistrate overruled husband's motion to dismiss CSEA's motion. At the hearing, husband was represented by counsel. Wife was not represented. CSEA was represented, and a reading of the transcript indicates CSEA advocated wife's position. At the hearing, CSEA maintained emancipation occurred only after the child obtained full time employment, in January, 1998. Husband maintained emancipation occurred on the date of the child's eighteenth birthday, November 9, 1996. In support of its case, CSEA presented the testimony of wife, husband (as if on-cross) and John Peiper, Director of Community Educational Services at Canton City schools. In support of husband's case, husband presented his own testimony. Wife testified the child started high school at Central Catholic attending all of the 9th grade and most of the 10th grade. However, in February of her sophomore year (1995), wife was forced to withdraw the child because of the child's behavioral and academic problems. Wife testified Central Catholic High School informed her the child would be asked to leave if not voluntarily withdrawn. In February of 1995, wife enrolled her daughter at Glenoak High School. Wife testified her daughter sporadically attended Glenoak from February, 1995, through April, 1995. Wife explained her daughter was suffering from a major depression and would not get up in the morning to go to school. The child was re-enrolled at Central Catholic High School for the 11th grade (1995-1996). Unfortunately, wife was again forced to withdraw her daughter for similar problems as those which lead to her withdrawal in February, 1995. In response to the court's question as to whether the daughter would testify, the attorney for CSEA responded: The child has been involved in psychological counseling since many years and the child is just now surfacing from a very deep time and this seems to be the issue that sets her over the edge. So the State of Ohio feels strongly that when mom and dad fight the children no matter what their age your Honor, should not be in the middle. So that's why the child is not here.
Wife testified her daughter attended Central Catholic from August, 1995 until October of 1995. Beginning in October of 1995, the daughter was enrolled in home instruction through Plain Local Schools. Wife testified a tutor would either come to their home or her daughter would go to a tutor's home to take classes. Wife testified she enrolled her daughter in Glenoak High School for her senior year, (1996-1997). However, her daughter indicated she would not attend high school. She did agree to attend Canton City night school. Wife testified daughter moved out around July 12, 1997, and that she had full-time employment as of January 1998, as a waitress at Damons. CSEA next presented the testimony of John Peiper, Director of Community Educational Services at Canton City Schools. Mr. Peiper testified the child enrolled in evening classes in 1996. Mr. Peiper testified the child took senior-level courses to complete the requirements for graduation in Ohio. When asked when the child would complete her education, Mr. Peiper responded: A. Well we were very hopeful that Erin would of been a graduate this June and we had talked with her about this and ah what I understand at this point is that Erin still needs about one and half credits ah of electives. She has pretty much met all of the core requirements and that again is another feature of the adult high school. It is not intended to physically and totally replicate the traditional high school. We don't have a facility a curriculum or staff of that size. The purpose of the the adult high school is to earn the last one or two credits. So we have limited course offering we don't for example have electives per say. We have just a couple of courses that people can take. But we don't have things like foreign language and and specialized areas so we had suggested that Erin might want to think about a correspondence course and we would accept you know any validated course work so that she could complete that. The other one missing an ingredient yet for her graduation is ah successful performance on the Ohio Ninth Grade proficiency exams in mathematics. She has successfully past all other portions of that so once she's past the math section and she's gotten that other credit and a half ah . . . we're anxious to award her high school diploma.
T. at 62-63.
In a Judgment Entry dated October 27, 1998, the magistrate found the child was emancipated at the beginning of January, 1998, the time at which she obtained full-time employment. Accordingly, the trial court ordered child support in the amount of $328.00 per month to be calculated through December 31, 1997. The unpaid child support would be paid at the rate of $328.00 per month by wage withholding plus processing fees. On November 4, 1998, husband filed his objections to the magistrate's decision. On December 9, 1998, husband filed amended objections to the magistrate's decision. In a December 15, 1998 Judgment Entry, the trial court overruled husband's objections and adopted the magistrate's decision. It is from that judgment entry appellant prosecutes this appeal, assigning the following as error:
 I. THE TRIAL COURT ERRED BY ALLOWING THE CHILD SUPPORT ENFORCEMENT AGENCY OF STARK COUNTY TO FILE A DECLARATORY JUDGMENT ACTION IN THIS ACTION BECAUSE THE CHILD SUPPORT ENFORCEMENT AGENCY HAS NO STATUTORY STANDING TO BRING A DECLARATORY JUDGMENT MOTION TO THE ATTENTION OF THE COURT.
 II. THE TRIAL COURT ERRED BY ALLOWING THE CHILD SUPPORT ENFORCEMENT AGENCY TO PROSECUTE A DECLARATORY JUDGMENT ACTION AGAINST THE APPELLANT ON THE ISSUE OF EMANCIPATION BECAUSE THE CHILD SUPPORT AGENCY CANNOT FILE A MOTION FOR DECLARATORY RELIEF BECAUSE THERE IS NO JUSTICIABLE CONTROVERSY BETWEEN THE APPELLANT AND IT SINCE THEY ARE NOT ADVERSE PARTIES.
 III. THE TRIAL COURT ERRED BY ALLOWING THE CHILD SUPPORT ENFORCEMENT AGENCY TO INTERVENE AS A PARTY SINCE THE CHILD SUPPORT ENFORCEMENT AGENCY IMPROPERLY AND ILLEGALLY FILED A MOTION TO INTERVENE PURSUANT TO OHIO REVISED CODE SECTION 3111.07 WHICH DEALS WITH PARENTAGE ISSUES AND SINCE THE CHILD SUPPORT ENFORCEMENT AGENCY IS NOT A PROPER PARTY FOR INTERVENTION IN THIS ACTION PURSUANT TO OHIO CIVIL RULES 24 AND 75.
 IV. THE TRIAL COURT ERRED BY ADOPTING THE MAGISTRATE'S RECOMMENDATION THAT STATED THAT THE CHILD SUPPORT CONTINUED PASSED THE CHILD'S EIGHTEENTH BIRTHDAY EVEN THOUGH THE CHILD WAS NOT ENROLLED FULL TIME IN HIGH SCHOOL.
 V. THE RULING OF THE TRIAL COURT IN REQUIRING THE APPELLANT TO PAY CHILD SUPPORT AS LONG AS THE ADULT CHILD IS IN HIGH SCHOOL VIOLATES THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND THE EQUAL PROTECTION CLAUSE OF THE OHIO CONSTITUTION IN THAT IT CREATES TWO CLASSES OF PERSONS IN WHICH ON CONTAINS ADULT CHILDREN WHO ARE BEING SUPPORTED BY THEIR PARENTS AFTER THEY ATTAIN THE AGE OF MAJORITY WHILE THE OTHER CONTAINS ADULT CHILDREN WHO ARE NOT BEING SUPPORTED BY THEIR PARENTS AFTER THEY ATTAIN THE AGE OF MAJORITY.
 VI. THE TRIAL COURT ERRED BY NOT ORDERING THE APPELLEE, THERESA RAMPI, TO RETURN ALL SUMS OF MONEY RECEIVED AS CHILD SUPPORT AFTER NOVEMBER 6, 1996, BECAUSE THE CHILD WAS NOT A FULL TIME STUDENT AT A FULLY ACCREDITED HIGH SCHOOL AND THE APPELLEE ATTEMPTED TO CONCEAL SAID FACT FROM THE CHILD SUPPORT ENFORCEMENT AGENCY AND THE TRIAL COURT.
 III
Because we find the third assignment of error dispositive of the entire appeal, we shall address it first. In his third assignment of error, appellant maintains the trial court erred in allowing CSEA to intervene as a party. We agree. As noted supra, CSEA relied upon R.C. 3111.07(B) and Civ.R. 24 as authority for its Motion for Orders Authorizing Intervention filed January 14, 1998, and its Motion for Orders Authorizing Intervention filed August 16, 1998. R.C. 3111.07(B) provides CSEA may intervene for purposes of collecting or recovering support in actions brought pursuant to Sections 3111.01 to 3111.19 of the Revised Code (actions to determine parentage) where child support is or was provided by a public agency. The case sub judice was not brought pursuant to any of those sections nor does CSEA assert child support is or was ever provided by public agency. Accordingly, CSEA's reliance upon R.C. 3111.07(B) is misplaced. CSEA's reliance upon Civ.R. 24 is likewise misplaced. Title IX, Probate, Juvenile, and Domestic Relations Proceedings of the Rules of Civil Procedure specifically states in Civ.R. 75 that Civ.R. 24 does not apply in divorce actions and related proceedings. Intervention in divorce actions and related proceedings is governed by Civ.R. 75(B). In its brief to this Court, CSEA argues it must be permitted to intervene pursuant to R.C. 3113.21. We disagree. R.C. 3113.21(G)(4)(a), (b) and (c) provide: The parent who is the residential parent and legal custodian of a child for whom a support order is issued or the person who otherwise has custody of a child for whom a support order is issued immediately shall notify, and the obligor under a support order may notify, [CSEA] of any reason for which the support order should terminate, including, but not limited to death, marriage, emancipation, enlistment in the armed services, deportation, or change of legal or physical custody of the child. A willful failure to notify the child support enforcement agency as required by this division is contempt of court. Upon receipt of a notice pursuant to this division, the agency immediately shall conduct an investigation to determine if any reason exits for which the support order should terminate. If the agency so determines, it immediately shall notify the court that issued the support order of the reason for which the support order should terminate.
(b) Upon receipt of a notice given pursuant to division (G)(4)(a) of this section, the court shall impound any funds received for the child pursuant to the support order and set the case for a hearing for a determination of whether the support order should be terminated or modified or whether the court should take any other appropriate action.
(c) If the court terminates a support order pursuant to divisions (G)(4)(a) and (b) of this section, the termination of the support order also terminates any withholding or deduction order as described in division (D) or (H) of this section that was issued relative to the support order prior to December 31, 1993, and any withholding or deduction notice as described in (D)(6), (D)(7), or (H) of this section that was issued relative to the support order on or after December 31, 1993. Upon termination of any withholding or deduction order or any withholding or deduction notice, the court immediately shall notify the appropriate child support enforcement agency that the order or notice has been terminated, and the agency immediately shall notify each employer, financial institutions, or other person or entity that was required to withhold or deduct a sum of money for the payment of support under the terminated withholding or deduction notice that the order or notice has terminated and that it is required to cease all withholding or deduction under the order or notice.
Pursuant to the statute, CSEA must conduct an investigation. If it determines the support order should terminate, it is required to notify the court of that determination. The statute neither authorizes nor contemplates CSEA's involvement beyond its duty to investigate and notify the trial court of the results of its investigation where it determines the support order should terminate. To find otherwise would render the directive found in R.C. 3113.21(G)(4)(c), "the court immediately shall notify [after hearing] the appropriate child support enforcement agency that the order or notice has been terminated", superfluous. In the case sub judice, instead of simply notifying the trial court its investigation revealed support should terminate, CSEA took it upon itself to terminate the wage withholding order on December 3, 1996, prior to any hearing and without any order from the trial court. In so doing, CSEA exceeded its authority under R.C.3113.21(G). Apparently CSEA's January 16, 1997, and April 16, 1997 Motions for Declaratory Judgment and its April 16, 1998 Motion to Reinstate Establish [sic] Order of Child Support were filed in an attempt to rectify its de facto termination of child support. To do so it necessarily had to seek permission to intervene as a party. The question becomes whether intervention by CSEA was permissible under Civ.R. 75(B). We hold it was not. Civ.R. 75(B) provides: (B) Joinder of parties. Civ.R. 14, 19, 19.1 and 24 shall not apply in divorce, annulment, or legal separation actions, However,
(1) A person or corporation having possession of, control of, or claiming an interest in property, whether real, personal, or mixed, out of which another seeks an award of spousal support or other support, may be made a party defendant;
(2) When it is essential to protect the interests of a child, the court may join the child of the parties as a party defendant and appoint a guardian ad litem and legal counsel, if necessary, for the child and tax the costs;
(3) When child support is ordered, the court, on its own motion or that of an interested person, after notice to the party ordered to pay child support and to his or her employer, may make the employer a party defendant.
The only potentially applicable exception is subsection (1). We find it does not apply to CSEA. Its seems obvious CSEA does not have possession or control of the property out of which wife seeks an award of support; i.e., husband's wages. Possession and control of that property rests directly with the husband and his employer, the Hoover Company, and indirectly, with the trial court. The issue next becomes whether CSEA claims an interest in the property? We think the answer is no. Because wife has not received any child support from a public agency, CSEA's role is limited. CSEA is merely the conduit of child support payments made by husband to wife. CSEA itself has no interest in the child support payment, apart from this purely administrative poundage assessment. We think the poundage assessment is insufficient to support a "claim of interest in the property." We note CSEA is specifically authorized under R.C. 2705.031 to initiate a contempt action for failure to pay support in Title IV-D cases. Unlike R.C.3111.07(B), which specifically allows the agency to intervene, R.C. 2705.031 permits CSEA to initiate and, arguably, prosecute the contempt action on behalf of an obligee. However, it stops short of authorizing CSEA to intervene. R.C. 2705.031 deals with the enforcement of child support orders. The issue raised herein goes beyond mere enforcement of the order. Rather it goes to the validity of the support order itself; i.e., its continued duration. This is an issue for which CSEA has no claimed interest. In the matter sub judice, only husband and wife, and potentially the child under Civ.R. 75(B)(2), are interested parties in determining whether the child is emancipated. Having concluded the trial court erred in allowing CSEA to intervene, we sustain this assignment of error, reverse the judgment resulting therefrom, and remand this matter to the trial court for further proceedings. We deem CSEA's various motions described supra, sufficient to constitute notice to the trial court under R.C. 3113.21(G) of CSEA's initial determination that support should terminate. When an appellate court remands a matter to the trial court for further proceedings, the trial court is required to proceed from the point at which the error occurred. Armstrong v. Marathon Oil Co. (1987),32 Ohio St.3d 397, 418. Accordingly, the trial court should proceed to a hearing pursuant to R.C. 3113.21(G)(4)(b), without the involvement of CSEA.
 I, II, IV, V, VI
Based upon our disposition of appellant's third assignment of error, these assignment of error are overruled as either being moot or premature.
By: Hoffman, J. Gwin, P.J. and Edwards, J. concur